IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AARON'S, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>MKW INVESTMENTS, INC., MKW II INVESTMENTS, LLC, KEVIN WELKER, and SUSAN WELKER,<br><br>    Defendants. | CIVIL ACTION NO. |

## **COMPLAINT**

Aaron's, Inc. ("Aaron's") files this Complaint against Defendants MKW Investments, Inc. ("MKW I"), MKW II Investments, LLC ("MKW II"), Kevin Welker, and Susan Welker (collectively referred to as "Defendants" or "Franchisees") and respectfully shows this Court the following:

### **NATURE OF THE ACTION**

1.

Aaron's is seeking a declaration of the parties' rights as to claims Defendants have asserted in a recent notice of disputes under a franchise agreement. This case is related to a prior action before the Court, *Aaron's, Inc. v. MKW Investments, Inc., et al.*, Civil Action No. 1:16-cv-01363-ELR ("*Aaron's I*"),

which is currently on appeal (11th Cir. No. 18-13666).  In *Aaron's I*, Aaron's sought to recover attorneys' fees and settlement costs incurred in a lawsuit filed by a third party arising from and relating to Defendants' franchised businesses.

2.

While *Aaron's I* was on appeal, Defendants sent Aaron's a notice of disputes under the franchise agreement between the parties.  Aaron's files this action because an actual controversy exists between the parties based the disputes raised by Defendants, and Aaron's is uncertain as to its rights and obligations regarding the disputes.

**PARTIES**

3.

Plaintiff Aaron's is a Georgia corporation with its principal place of business in Atlanta, Georgia.

4.

Defendant MKW I is a Nevada corporation with its principal place of business in St. Robert, Missouri.

5.

Defendant MKW II is a Missouri limited liability company.  Defendant Kevin Welker, a citizen of the State of Missouri, is the sole member of MKW II; therefore, for purposes of diversity jurisdiction, MKW II is a citizen of Missouir.

6.

Defendant Kevin Welker is a resident and citizen of the State of Missouri.

7.

Defendant Susan Welker is a resident and citizen of the State of Missouri.

## JURISDICTION AND VENUE

8.

This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 because complete diversity of citizenship exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Court also has jurisdiction to issue a declaratory judgment under 28 U.S.C. § 2201.

9.

This Court has personal jurisdiction over Defendants under Section 12.15 of the 748 and 1025 Franchise Agreements (as defined below):

> Franchisee, Guarantor and Franchisor agree that any litigation shall be brought by Franchisor, Franchisee or Guarantor and their respective affiliates, in a state court of Georgia or in any federal district court located in that

state and to the fullest extent permitted by law . . . .
Franchisee and Guarantor hereby consent to the
jurisdiction of such courts and waive any defenses they
may have that such courts lack venue with respect to
such proceeding.

10.

Furthermore, this Court has personal jurisdiction over Defendants Kevin

Welker and Susan Welker under Section 6 of the Payment and Performance

Guarantee (as defined below):

Any litigation . . . shall be brought in the state in which
Franchisor's principal place of business is located at the
time the action is brought, or in the federal district court
for the district where such principal place of business is
located at the time the action is brought. Each Guarantor
hereby consents to the jurisdiction of such courts and
waives any defense that such court lacks jurisdiction or
venue with respect to such proceeding.

11.

Venue is proper in this judicial district under Section 12.15 of the 748 and

1025 Franchise Agreements (as defined below) and Section 6 of the Payment and

Performance Guarantee (as defined below), because Defendants have consented to

venue in this Court.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### 12.

Aaron's is a leader in the sales and lease ownership and specialty retailing of furniture, consumer electronics, home appliances, and accessories.  Aaron's has both company-owned and franchised stores.

### 13.

Franchisees operate two Aaron's franchised stores in Missouri.

**A.    The Franchise Agreements**

### 14.

In August 2009, Kevin Welker and Susan Welker signed a Franchise Agreement with Aaron's on behalf of MKW I pertaining to Store #1025 in Warrensburg, Missouri (the "**1025 Franchise Agreement**").  A true and correct copy of the 1025 Franchise Agreement, along with all exhibits thereto, is attached as *Exhibit A.*

### 15.

Kevin Welker and Susan Welker also signed a Payment and Performance Guarantee with Aaron's and agreed to be responsible for all of the payments and performance for MKW I to Aaron's in conjunction with the 1025 Franchise Agreement.  *See Exhibit A.*

16.

On June 10, 2014, MKW I and Aaron's transferred and assigned all of MKW I's interest in the Warrensburg Franchise to MKW II through a Transfer and Assignment Agreement (the "**Assignment**").   Kevin Welker and Susan Welker signed the Assignment as Guarantors.  A true and correct copy of the Assignment is attached as ***Exhibit B***.

17.

In the Assignment, MKW II agreed to assume:

> [A]ll liabilities and obligations of [MKW I] under the Franchise Documents arising after the Effective Date, and agree[d] to fully and to faithfully observe and perform each and every term, covenant, obligation, agreement, undertaking and condition of the Franchise Documents on the part of [MKW I] thereunder to be observed and performed after the Effective Date.

18.

On or about April 13, 2007, Kevin Welker and Susan Welker signed a Franchise Agreement with Aaron's on behalf of MKW I pertaining to Store #748 in St. Robert, Missouri (the "**748 Franchise Agreement**").   A true and correct copy of the 748 Agreement, along with all exhibits thereto, is attached as ***Exhibit C.***

19.

Kevin Welker and Susan Welker also signed a Payment and Performance Guarantee with Aaron's in order to guarantee all of the payments and performance for MKW I to Aaron's in conjunction with the 748 Agreement.  ***See Exhibit C.***

**B.     The *Mundy* Lawsuit and Defendants' State Court Complaint**

20.

On April 11, 2012, Tanya Mundy, a former employee of Franchisees at Store #1025, filed a lawsuit against Franchisees,[1] store manager Scott Hibbs, and Aaron's in the Circuit Court of Johnson County, Missouri captioned *Mundy v. Aaron's, Inc., et al.*, Case No. 12JO-CV00568 ("*Mundy* Lawsuit").

21.

In the *Mundy* Lawsuit, Mundy alleged that her supervisor, an employee store manager of Franchisees, sexually harassed her repeatedly and that she was fired when she complained about his conduct.  Mundy sought to hold Aaron's jointly and severally liable with the Franchisees for the defendant store manager's conduct on various vicarious liability theories.

---

[1] Susan Welker was not named as a Defendant.

22.

Shortly after the *Mundy* Lawsuit was filed, in the exercise of its discretion under the 1025 Franchise Agreement, Aaron's retained for its defense the Atlanta law firm of Smith, Gambrell & Russell, LLP, as well as a Missouri law firm to serve as local counsel.

23.

Both Aaron's and Mundy moved for summary judgment in the *Mundy* Lawsuit.  The court denied both motions.  Aaron's ultimately resolved the *Mundy* Lawsuit pursuant to a confidential settlement agreement the week before trial.

24.

Over the three-year course of the *Mundy* Lawsuit, Aaron's incurred approximately $230,000 in attorneys' fees.

25.

After Aaron's and Mundy settled, Aaron's sought to recover its litigation expenses from Defendants in accordance with the indemnification obligation in the Franchise Agreement.

26.

Defendants refused to indemnify Aaron's for the litigation expenses Aaron's incurred in defending and settling the *Mundy* Lawsuit.

27.

In November 2015, Defendants filed a complaint in Fulton County, Georgia Superior Court, asserting claims for declaratory and injunctive relief to prevent Aaron's from declaring Defendants in default and terminating the 1025 Franchise Agreement based on Defendants' non-payment.  A true and correct copy of the Fulton County complaint is attached hereto as ***Exhibit D.***

28.

In the Fulton County complaint, Defendants alleged, among other things, that Mr. Welker sought to acquire a Rent-A-Center location in Warrensburg, Missouri in June 2015, in order to turn the location into an Aaron's franchise. Defendants claimed that Aaron's informed Mr. Welker he would need to pay the litigation expenses Aaron's incurred in the *Mundy* Lawsuit before the acquisition could go forward.  ***Exhibit D***, ¶¶ 54-57.

29.

The state court complaint was ultimately dismissed while the parties engaged in mediation under the dispute resolution provision of the 1025 Franchise Agreement.

C.    The *Aaron's I* Lawsuit

30.

On April 27, 2016, Aaron's filed *Aaron's I* against Defendants, seeking payment for the attorneys' fees and settlement costs that Aaron's incurred in *Mundy*.

31.

Although Defendants raised several defenses in *Aaron's I*, Defendants did not assert any counterclaims.

32.

Aaron's moved for partial summary judgment in *Aaron's I* based on the language of the indemnification provision in the 1025 Franchise Agreement.

33.

In opposing Aaron's motion for partial summary judgment, Defendants relied on allegations concerning a failed Rent-A-Center transaction involving Store #1025.  Contrary to Defendants' allegations in the dismissed Georgia state court lawsuit, however, Defendants now claimed that Mr. Welker wanted to transfer Store #1025 to Rent-A-Center but that Aaron's would not allow the transfer because of the outstanding litigation expenses owed to Aaron's.  A true and correct

copy of Defendants' Statement of Additional and Disputed Material Facts filed in *Aaron's I* is attached hereto as ***Exhibit E***.

34.

On July 31, 2018, the Court denied Aaron's partial motion for summary judgment and granted Defendants' motion for summary judgment. Aaron's appealed the final judgment in *Aaron's I*, and the case is pending before the Eleventh Circuit. *See Aaron's Inc. v. MKW Investments, Inc., et al.*, Appeal No. 18-13666 (11th Cir.).

**D.     Renewal of the 748 Store**

35.

In *Aaron's I*, Aaron's sought a declaration that Defendants were in cross-default under the 748 Franchise Agreement.

36.

During the pendency of *Aaron's I*, which is still on appeal, the 748 Franchise Agreement came up for renewal.

37.

Section 2.2(b) of the 748 Franchise Agreement provides that "Franchisee may not renew the [Franchise Agreement] unless . . . (ii) no Event of Default (as

herein defined), or event which with the giving of notice or passage of time or both would constitute an Event of Default, exists as of the Expiration Date."

38.

In order to preserve the status quo while *Aaron's I* is pending, Aaron's offered to either (1) temporarily extend the existing 748 Franchise Agreement through the conclusion of *Aaron's I*, or (2) enter into a new franchise agreement for Store #748 on the condition that Defendants agree such renewal agreement would not prejudice or impact Aaron's rights in *Aaron's I*.

39.

Defendants continued to operate under the terms of the 748 Franchise Agreement during *Aaron's I*, thereby accepting by performance the first option presented by Aaron's relative to the renewal of the 748 Franchise Agreement.

40.

Aaron's has also continued to operate under the terms of the 748 Franchise Agreement during *Aaron's I*.

**E.    Defendants' Notice of Disputes**

41.

On January 31, 2019, Defendants submitted a notice of disputes to Aaron's under Section 11.1 of the 1025 Franchise Agreement (the "Notice").  Defendants raised four disputes.

42.

First, Defendants alleged in the Notice that Aaron's unreasonably withheld consent for Defendants to transfer Store #1025 to Rent-A-Center, Inc.

43.

Defendants were aware of Aaron's alleged refusal to consent to a transfer to Rent-A-Center at the time *Aaron's I* was filed.

44.

Defendants relied on the failed Rent-A-Center transaction in the Fulton County complaint Defendants filed (and later dismissed) before the filing of the *Aaron's I* lawsuit.

45.

The Fulton County complaint and *Aaron's I* are based on the same underlying facts.

46.

Defendants also relied on the failed Rent-A-Center transaction in opposition to Aaron's motion for partial summary judgment.

47.

Defendants did not assert a counterclaim in *Aaron's I*, based on the failed Rent-A-Center transaction or otherwise.

48.

Aaron's contends that any dispute based on the failed Rent-A-Center transfer is a mandatory counterclaim that should have been brought in *Aaron's I*. However, because of Defendants' notice of disputes, Aaron's is uncertain as to its rights and obligations regarding this dispute.

49.

Second, Defendants alleged in the Notice that Aaron's materially breached the 748 Franchise Agreement by precluding Defendants from renewing the 748 Franchise Agreement.

50.

Both parties have continued to operate under the prior 748 Franchise Agreement throughout the pendency of *Aaron's I*.

51.

Defendants have continued to pay royalty fees for Store #748 during *Aaron's I* as they did under the 748 Franchise Agreement.

52.

In turn, Defendants have continued to receive the benefits provided under the 748 Franchise Agreement, including, but not limited to, the operation of an Aaron's-branded franchise and the use of Aaron's trademarks in connection with such operation.

53.

Because Defendants have raised the alleged failure to renew the 748 Franchise Agreement in a notice of disputes to Aaron's, Aaron's is uncertain as to its right to continue maintaining the status quo during the pendency of *Aaron's I*.

54.

Third, Defendants alleged in the Notice that Aaron's materially breached the 1025 Franchise Agreement by changing the criteria for determining store valuation in sales agreements for the purchase of franchises.

55.

Defendants do not rely on any section of the 1025 Franchise Agreement in support of their claim as to the proper valuation in the event Aaron's purchased

Store #1025 from Defendants.   Instead, Defendants cited an addendum to the Agreement of Sale that showed how Store #1025 would have been valued for Defendants to purchase it from Aaron's.

56.

There is nothing in the 1025 Franchise Agreement or otherwise that requires Aaron's to purchase Store #1025 from Defendants.

57.

Because Defendants have raised Aaron's methodology for valuing Store #1025 in a notice of disputes to Aaron's, Aaron's is uncertain as to its rights and obligations regarding the valuation of Store #1025.

58.

Fourth, Defendants alleged in the Notice that Aaron's materially breached both the 748 Franchise Agreement and the 1025 Franchise Agreement by announcing it would not enforce the "Franchisee's Covenant Not to Compete" provision in the Franchise Agreements.

59.

Sections 7.21(a)(ii) and (b) of the 748 Franchise Agreement and the 1025 Franchise Agreement restrict Defendants' ability to, among other things, employ any person who worked for Aaron's or another franchisee within the past twelve

months or engage in certain competing businesses within Defendants' designated territory within one year of termination of the franchise agreements.

60.

Defendants contend that Scott Harvey, Aaron's Vice President of Franchise Operations, sent an email to all franchisees stating that Aaron's would no longer enforce these two provisions of the franchise agreements.

61.

Because Defendants have raised Aaron's alleged refusal to enforce the "Franchisee's Covenant Not to Compete" in a notice of disputes to Aaron's, Aaron's is uncertain as to its obligation to enforce the "Franchisee's Covenant Not to Complete" going forward.

62.

Based on these disputes, Defendants contend they are entitled to over $7.5 million.

63.

All conditions precedent for bringing this lawsuit have been performed or waived.

**COUNT I**
**DECLARATORY JUDGMENT THAT AARON'S IS NOT**
**REQUIRED TO RENEW THE 748 FRANCHISE AGREEMENT DURING**
**THE PENDENCY OF *AARON'S I***

64.

Aaron's realleges and reincorporates the allegations contained in the paragraphs above verbatim as if fully set forth herein.

65.

Defendants contend that Aaron's materially breached the 748 Franchise Agreement by precluding Defendants from renewing the 748 Franchise Agreement.

66.

Both parties have continued to operate under the prior 748 Franchise Agreement during *Aaron's I*.

67.

Although Aaron's contends that Defendants have not suffered any damages due to the alleged non-renewal of the 748 Franchise Agreement, Defendants contend that Aaron's is not entitled to maintain the status quo during the pendency of *Aaron's I*.

68.

As a result, there is an actual and justiciable controversy between Aaron's and Defendants, and Aaron's is uncertain as to its obligation to renew the 748 Franchise Agreement during the pendency of *Aaron's I*.

**COUNT II**
**DECLARATORY JUDGMENT THAT AARON'S IS NOT REQUIRED TO ENGAGE IN DISPUTE RESOLUTION PROCESS WITH FRANCHISEES AS TO RENT-A-CENTER DISPUTE BECAUSE IT IS A MANDATORY COUNTERCLAIM IN *AARON'S I***

69.

Aaron's realleges and reincorporates the allegations contained in the paragraphs above verbatim as if fully set forth herein.

70.

Defendants did not assert a counterclaim regarding the Rent-A-Center transaction in *Aaron's I*.

71.

Defendants' claim regarding the Rent-A-Center transaction arises out of the same transaction or occurrence as the subject matter of Aaron's claims in *Aaron's I*.

72.

Both Aaron's claims in *Aaron's I* and Defendants' claim that Aaron's unreasonably withheld consent to transfer Store #1025 arise out of duties owed under the 1025 Franchise Agreement and are based on Aaron's position that Defendants are in default under the 1025 Franchise Agreement for failing to indemnify Aaron's for litigation expenses incurred in the *Mundy* Lawsuit.

73.

Although Aaron's contends that any claim based on Aaron's withholding consent to transfer Store #1025 was a compulsory counterclaim that should have been brought in *Aaron's I*, Defendants have submitted a notice of disputes to Aaron's about the Rent-A-Center transaction.

74.

As a result, there is an actual and justiciable controversy between Aaron's and Defendants, and Aaron's is uncertain as to its rights and obligations regarding the Rent-A-Center dispute.

## COUNT III
## <u>DECLARATORY JUDGMENT THAT AARON'S IS NOT REQUIRED TO VALUE STORE 1025 A SPECIFIC WAY</u>

### 75.

Aaron's realleges and reincorporates the allegations contained in the paragraphs above verbatim as if fully set forth herein.

### 76.

Defendants contend that Aaron's materially breached the 1025 Franchise Agreement by changing the criteria for determining store valuation.

### 77.

Nothing in the 1025 Franchise Agreement or otherwise requires that Aaron's purchase Store #1025 or requires that Aaron's value Store #1025 in a specific way.

### 78.

Although Aaron's contends that it is not required to value Store #1025 in any specific way, Defendants disagree and have submitted a notice of disputes to Aaron's.

### 79.

As a result, there is an actual and justiciable controversy, and Aaron's is uncertain as to its rights and obligations regarding the valuation of Store #1025.

## COUNT IV
## DECLARATORY JUDGMENT THAT AARON'S IS NOT REQUIRED TO ENFORCE THE FRANCHISEE'S COVENANT NOT TO COMPETE

80.

Aaron's realleges and reincorporates the allegations contained in the paragraphs above verbatim as if fully set forth herein.

81.

Defendants contend that Aaron's materially breached both the 748 Franchise Agreement and the 1025 Franchise Agreement by deciding not to enforce the "Franchisee's Covenant Not to Compete."

82.

Although Aaron's contends that it is not required to enforce the "Franchisee's Covenant Not to Compete," Defendants disagree and have submitted a notice of disputes to Aaron's.

83.

As a result, there is an actual and justiciable controversy between Aaron's and Defendants, and Aaron's is uncertain as to whether it is required to enforce the "Franchisee's Covenant Not to Compete."

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court enter a declaratory judgment that:

(i)     Aaron's is not required to renew the 748 Franchise Agreement during the pendency of *Aaron's I*;

(ii)    Any claim based on Aaron's withholding consent to transfer Store #1025 to Rent-A-Center was a compulsory counterclaim that should have been brought in *Aaron's I*;

(iii)   Aaron's is not required to value Store #1025 in a specific way;

(iv)    Aaron's is not required to enforce the "Franchisee's Covenant Not to Compete" in the 748 Franchise Agreement and the 1025 Franchise Agreement; and

(b)     For such other and further relief as this Court deems just and proper.

Respectfully submitted, this 13th day of August, 2019.

/s/ Ava J Conger

KILPATRICK TOWNSEND
& STOCKTON LLP
1100 Peachtree Street, NE, Suite 2800
Atlanta, Georgia 30309
Telephone (404) 815-6500
Facsimile  (404) 815-6555
jjett@kilpatricktownsend.com
bsingleton@kilpatricktownsend.com
aconger@kilpatricktownsend.com

John P. Jett
Georgia Bar No. 827033
Burleigh L. Singleton
Georgia Bar No. 649084
Ava J Conger
Georgia Bar No. 676247

Counsel for Plaintiff Aaron's, Inc.